**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ANDREW SMIGELSKI,**

**Plaintiff,**

**v.**

**GREGG CLULEY, et al.,**

**Defendants.**

**Case No. 2:20-CV-4812**
**JUDGE SARAH D. MORRISON**
**Magistrate Judge Kimberly A. Jolson**

**REPORT AND RECOMMENDATION**
**AND ORDER**

Plaintiff Andrew Smigelski, who is proceeding *pro se*, brings this action against: (1) Logan Police Detective Gregg Cluley; (2) Former Logan Police Officer Josh Mowery; (3) Logan Police Captain Ryan Gabriel; (4) Logan Police Detective Ben Skinner; (5) Logan Patrol Supervisor Michael Walton; (6) Logan Police Chief Jerry Mellinger; (7) Logan Police Dispatcher Lacy Levering; (8) Logan City Law Director Abigail Saving; (9) Hocking County Judge Jonah Saving; (10) Logan Mayor Greg Fraunfelter; (11) City of Logan, Ohio; (12) Hocking County Sheriff's Deputy Caleb Moritz; (13) Hocking County Sheriff Lanny North; (14) Hocking Sheriff's Department; (15) Hocking County; (16) Southeast Ohio Regional Jail (as an entity as well as the guards individually); (17) Unknown agents for the Athens FBI; (18) Unknown agents for the Cincinnati FBI; (19) The FBI; and (20) Ken and Jessica James. This matter is before the Undersigned for consideration of Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 1) and the initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2).

Plaintiff's request to proceed *in forma pauperis* is **GRANTED**. All judicial officers who render services in this action shall do so as if the costs had been prepaid. 28 U.S.C § 1915(a).

1

Furthermore, having performed an initial screen, it is **RECOMMENDED** that Plaintiff be permitted to proceed with his claims against: (1) Defendants Unnamed Southeastern Ohio Regional Jail ("SEORJ") Guards for their alleged unconstitutional collection of his DNA; (2) Defendant Cluley for his alleged misrepresentations in obtaining a search warrant; and (3) Defendants Mowery, Skinner, and Gabriel for their alleged excessive force against Plaintiff. Because Plaintiff's Complaint does not specify a prayer for relief, Plaintiff is **ORDERED** to amend his Complaint to include the specific relief requested from each Defendant within twenty-one (21) days of the date of this Report and Recommendation.  It is further **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED**.

## I.    BACKGROUND

The Ohio Court of Appeals summarized the facts and procedural history of Plaintiff's criminal case:

> [Plaintiff] became involved in a dispute with his neighbors, the James family, that resulted in him being arrested and charged with inducing panic, menacing, resisting arrest, and obstructing official business.  The menacing charge arose from his dispute with the James family. The additional charges arose when police arrested [Plaintiff] at his house on the menacing charge.
>
> Shortly after his arrest, the State dismissed the inducing panic charge and amended the menacing charge to aggravated menacing.  The State also served a warrant on [Plaintiff] to search his home.  [Plaintiff] filed a motion to suppress evidence alleging that the search warrant was invalid on its face, which the State conceded at the suppression hearing.  However, even though the court granted [Plaintiff's] motion to suppress, it does not appear that the ruling had any practical effect regarding [Plaintiff's] case because none of the charges pending at the time (aggravated menacing, obstructing official business, and resisting arrest) were dismissed after the motion was granted.  [Plaintiff] waived his right to a jury trial and a bench trial ensued.

*Ohio v. Smigelski*, No. 19CA6, 2019 WL 5797340, at *1 (Oh. Ct. App. Nov. 1, 2019).

At the trial, the prosecution moved to dismiss the charges for resisting arrest and obstructing official business.  *Id*. at *2.  Plaintiff was convicted of menacing, a fourth-degree

misdemeanor, and sentenced to a fine and two years of probation.  *Id*. at **1, 3.  Plaintiff unsuccessfully appealed, alleging ineffective assistance of trial counsel, prosecutorial misconduct, and, more broadly, that his conviction was against the manifest weight of the evidence.  *Id*. at **4– 6.  It does not appear that Plaintiff appealed to the Ohio Supreme Court.

## II.    PLAINTIFF'S COMPLAINT

Generally speaking, Plaintiff alleges that state and local officials violated his First, Second, Fourth, Sixth, Eighth, and Fourteenth Amendment rights, and federal officials violated his First and Fourth Amendment rights.  (*See generally* Doc. 1-1).

Plaintiff's Complaint elaborates on the events leading to his arrest.  According to Plaintiff, he "got into a brief oral disagreement with his neighbors," Ken and Jessica James, regarding a noise complaint he made against them.  (*Id.* at ¶ 4).  His neighbors then went to their friend, a Logan, Ohio police officer, Defendant Josh Mowery about the incident.  (*Id*. at ¶¶ 7–8).  Defendant Mowery is allegedly known for his misconduct in the police department.  (*Id*. at ¶¶ 21–23).  Defendant Mowery allegedly asked one of the department's dispatchers, Defendant Lacy Levering, "to call the jail to make sure there was a bed available."  (*Id*. at ¶ 48).

On September 12, 2018, Defendant Mowery allegedly went to Plaintiff's house and peered into his window with his gun drawn and then called for the Special Reaction Team, which arrived shortly thereafter.  (*Id*. at ¶¶ 51–52).  Defendant Caleb Moritz, Sheriff's Deputy for Hocking County, instructed Plaintiff to complete a "Voluntary Statement" form.  (*Id*. at ¶ 140).  Defendant Moritz allegedly indicated his intent to enter Plaintiff's house and recover Plaintiff's firearm.  (*Id*. at ¶ 142).  Plaintiff, however, did not give him permission to do so.  (*Id*. at ¶ 143).

Plaintiff alleges that Defendant Moritz then told him that he was not under arrest and would not be attacked.  (*Id*. at ¶ 139).  Defendant Mowery, however, allegedly "grabbed [P]laintiff by the

3

collar, whipped him to his knees, then grabbed the back of Plaintiff's neck and slammed Plaintiff's head into the concrete." (*Id*. at ¶ 57). According to Plaintiff, Defendant Mowery then handcuffed Plaintiff tightly enough to cause bruising. (*Id*. at ¶ 59). Defendant Ben Skinner, a detective for the Logan Police Department who was also at the scene, allegedly "piled onto" Plaintiff and tasered him. (*Id*. at ¶¶ 154–55). Defendant Ryan Gabriel, Captain of the Logan Police Department, along with several other officers, allegedly brutally restrained Plaintiff. (*Id*. at ¶ 164).

Defendant Mowery then drove Plaintiff to SEORJ. Plaintiff alleges that, although Defendant Mowery did not read him his *Miranda* rights, he nevertheless requested an attorney and invoked his right to remain silent. (*Id*. at ¶¶ 60–62). Plaintiff was strip searched upon his arrival at SEORJ. (*Id*. at ¶ 170). SEORJ guards also collected his DNA. (*Id*. at ¶ 171).

Defendant Gregg Cluley, one of the detectives present at Plaintiff's arrest, later searched Plaintiff's house. (*Id*. at ¶ 87). To obtain the search warrant, Defendant Cluley allegedly made a number of false accusations. For example, Plaintiff says that, although body cameras show otherwise, Defendant Cluley falsely accused him of handling a gun when Defendant Mowery first arrived at Plaintiff's house. (*Id*. at ¶ 74). Defendant Cluley also allegedly falsely claimed that the police seized a knife from Plaintiff during his arrest. (*Id*. at ¶ 79). And, says Plaintiff, Defendant Cluley repeated these false statements to the Logan Daily News. (*Id*. at ¶ 102).

The warrant authorized the search of Plaintiff's residence for "[f]irearms, ammunition, firearm accessories, cell phones, computers" and "writing pertaining his thought process and any contraband." (*Id*. at ¶ 87). It also permitted a forensic examination of Plaintiff's cell phone. (*Id*. at ¶ 98). Plaintiff alleges that Defendant Cluley viewed and copied Plaintiff's internet, phone, and location history, as well as naked photos, text messages, and applications data. (*Id*. at ¶ 100). The government did not bring charges pursuant to the search results, and at a December 18, 2018,

4

hearing, Logan City Prosecutor, Defendant Abigail Saving, agreed "to the dismissal of the search warrant." (*Id*. at ¶ 118). Still, Plaintiff alleges she repeatedly referred to evidence at trial that had not been produced and made false statements at both Plaintiff's arraignment and trial. (*Id*. at ¶¶ 105, 125, 129). Plaintiff notes that Defendant Abigail Saving is married to Defendant Judge Jonah Saving, who granted Defendant Abigail Saving's request for bail and issued the search warrant before recusing himself from the case. (*Id*. at ¶¶ 107–108, 120, 167).

Plaintiff brought this action on September 14, 2020, for numerous alleged constitutional violations stemming from his September 12, 2018, arrest and subsequent proceedings. (*See generally* Doc. 1-1).

### III.    STANDARD

Because Plaintiff is proceeding *in forma pauperis*, the Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." In reviewing his Complaint, the Court must construe it in favor of Plaintiff, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 555). Although *pro se* complaints are to be

construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## IV.  DISCUSSION

Of Plaintiff's numerous claims, only a handful survive.  Apart from those, as explained below, Plaintiff's Complaint suffers from several fatal flaws, both in form and in substance.  The Undersigned addresses them below.

### A.  Private Parties

Plaintiff's claims against his neighbors, Ken and Jessica James, must be dismissed as they are not cognizable under 42 U.S.C. § 1983.  To state a cause of action under Section 1983, a plaintiff must allege: "(1) a deprivation of a right secured by the Constitution or law of the United States (2) caused by a person acting under color of state law."  *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted).  Regarding the second element, "[t]he traditional definition of acting under color of law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *U.S. v. Classic*, 313 U.S. 299, 326 (1941)).  "Therefore, as a general rule, § 1983 does not reach the conduct of private parties acting in their individual capacities."  *Weser v. Goodson*, 965 F.3d 507, 515–16 (6th Cir. 2020) (citing *Lindsey v. Detroit Ent., LLC*, 484 F.3d 824, 827 (6th Cir. 2007)).  Although there are exceptions to this rule, Plaintiff does not raise any of them.  And because Defendants Ken and Jessica James are private parties, Plaintiff has failed to state a claim against them.

### B. Personal Involvement

Relatedly, to state a claim for relief under Section 1983, Plaintiff must allege that each defendant had "personal involvement" in the deprivation of his rights. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). Importantly, Section 1983 does not permit *respondeat superior* liability. Rather, a supervisor may be held liable only where he "encouraged the specific incident of misconduct or in some other way directly participated in it." *Combs v. Wilkinson*, 315 F. 3d 548, 558 (6th Cir. 2002) (quoting *Bellamy v. Bradley*, 729 F. 2d 416, 421 (6th Cir. 1984)). Plaintiff fails to allege personal involvement or supervisory liability as to seven Defendants.

### 1.  *Defendant Moritz*

To begin, Plaintiff does not provide sufficient factual content or context from which the Undersigned could infer that Defendant Moritz was personally involved in any alleged unconstitutional conduct. Plaintiff alleges that Defendant Moritz told Plaintiff he would enter his house (Doc. 1-1 at ¶ 142) and "encouraged the Logan Police Department to conduct an illegal search of [his] home" (*id*. at ¶ 149). But Plaintiff does not allege officers searched his house at that time. Rather, he alleges his house was later searched pursuant to a faulty warrant. (*Id*. at ¶ 87). Accordingly, Plaintiff has failed to state a claim against Defendant Moritz.

### 2.  *Defendant Mellinger*

Next, Plaintiff alleges that Defendant Mellinger, Logan's Chief of Police, failed to intervene both when Defendant Mowery arrested him and when Defendant Cluley allegedly made false statements to obtain a search warrant. Although not entirely clear, it appears Plaintiff seeks to hold Defendant Mellinger responsible based on his supervisory position. But as noted, a supervisory official cannot be held liable under Section 1983 unless the plaintiff can demonstrate that "the supervisor encouraged the specific incident of misconduct or in some other way directly

participated in it." *Combs*, 315 F. 3d at 558 (quoting *Bellamy*, 729 F. 2d at 421). Specifically, a plaintiff must allege that the supervisory official "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Combs*, 315 F. 3d at 558. In other words, "[s]upervisory liability under § 1983 cannot be based on a mere failure to act but must be based upon active unconstitutional behavior." *Id.* (citing *Bass v. Robinson*, 167 F. 3d 1041, 1048 (6th Cir. 1999)).

Plaintiff's allegations against Defendant Mellinger fail to satisfy this standard. He does not allege facts suggesting Defendant Mellinger implicitly authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct. *Combs*, 315 F. 3d at 558. Instead, he alleges only that Defendant Mellinger failed to intervene. Section 1983, however, does not permit claims based on a failure to act. *Id.* Thus, Plaintiff's claims against Defendant Mellinger cannot survive.

3. *Defendants Levering and Unnamed FBI Agents*

Plaintiff also fails to allege factual content or context from which the Undersigned could infer that Defendant Lacy Levering, a dispatcher for the Logan Police Department, was personally involved in any alleged constitutional violation. Plaintiff alleges only that Defendant Mowery asked Defendant Levering to call the jail to see if there were beds available, and she complied. (Doc. 1-1 at ¶ 48). Even construing Plaintiff's allegations liberally, the Undersigned cannot draw an inference of unconstitutional conduct on the part of Defendant Levering. Plaintiff's claims against her must be dismissed.

The same is true regarding Plaintiff's claims against the unnamed FBI agents. Plaintiff alleges that unnamed FBI agents received information from Defendant Cluley and surveilled and investigated Plaintiff until the search warrant "was dismissed." (*Id.* at ¶¶ 189–97). But Plaintiff does not set forth facts showing, for example, that the agents knew the warrant was based on

purportedly perjured information.  Thus, Plaintiff fails to provide sufficient factual content or context from which the Undersigned could infer the agents were involved in any alleged unconstitutional conduct.  Plaintiff's claims against the unnamed FBI agents must, therefore, be dismissed.

### 4.  Defendants North, Sheriff's Department, Hocking County

Finally, Plaintiff fails to allege specific facts as to Defendants Lanny North, Hocking County Sheriff's Department, or Hocking County.  To the extent Plaintiff seeks to hold these Defendants liable under a theory of *respondeat superior*, as explained, Section 1983 prohibits him from doing so.  *See Harris v. Goins*, 156 F. Supp. 3d 857, 862 (E.D. Ky. 2015) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 6th Cir. 1996)).  Accordingly, Plaintiff's claims against these Defendants must be dismissed.

## C.  Immunity

Additionally, several Defendants are immune from liability.

### 1.  Judicial Immunity

Taking the factual allegations in the Complaint as true, Plaintiff's claims against Defendant Judge Saving are barred by judicial immunity.  Judicial immunity shields judges, and other public officers, "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).  "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  Judicial immunity is overcome only if the actions taken were not in the judge's judicial capacity and if the actions taken were in absence of all jurisdiction. *Id*. at 11–12.

Plaintiff alleges that Defendant Judge Saving "signed off" on Defendant Cluley's search warrant "that was almost entirely perjured;" "failed to question the obviously deficient search warrant;" and "signed off on a search warrant for a case that he knew, or should have known his wife would be prosecuting." (Doc. 1-1 ¶¶ 165–67). But these allegations do not lead to an inference that Defendant Judge Saving was acting outside of his judicial capacity when he issued the warrant. *See, e.g.*, *Nali v. Grosse Pointe Woods*, No. CIV. 04-10235-BC, 2005 WL 1050773, at *1 (E.D. Mich. Apr. 19, 2005) (holding that municipal judge was immune from plaintiff's allegations that she conspired to and violated his civil rights when she signed a search warrant authorizing the search of his residence).

The same is true regarding Plaintiff's allegation that Defendant Judge Saving "knew or should have known" that his wife was involved in the case. Again, there are no facts in the Complaint from which the Court could infer that Defendant Judge Saving acted in the absence of all jurisdiction. *See, e.g.*, *King v. McCree*, 573 F. App'x 430, 441 (6th Cir. 2014) ("To the extent plaintiff may be alleging bias on the part of defendants that infected the fairness of their rulings and proceedings, plaintiff's allegations of bias or misconduct do not render the actions of defendants non-judicial.").

In sum, even construing the complaint in the light most favorable to Plaintiff, his claims against Defendant Judge Saving are barred by judicial immunity and must be dismissed.

### 2. *Prosecutorial Immunity*

Relatedly, Plaintiff's claims against Defendant Abigail Saving are barred by prosecutorial immunity. Prosecutors are "absolutely immune from liability" for their actions that are "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (citation and quotation marks omitted). "[A]bsolute immunity," however, "may

10

not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." *Id*. at 342 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 433 n.33 (1976)). "The analytical key to prosecutorial immunity is whether the actions in question are those of an advocate." *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 514 (6th Cir. 2019) (alteration, quotation marks, and citation omitted). "Whether the prosecutor has an improper motive, acts in bad faith, or even acts in an unquestionably illegal manner is irrelevant." *Id*. (citations omitted).

Plaintiff's allegations against Defendant Abigail Saving, including for example, that she lied at his arraignment and refused to comply with discovery, (*see generally* Doc. 1-1 at ¶¶ 103–35), fall within the scope of prosecutorial immunity. *See Van de Kamp*, 555 U.S. at 341 (noting that prosecutorial immunity applies to actions "intimately associated with the judicial phase of the criminal process"). The same is true regarding his allegations pertaining to the criminal investigation, (*see generally* Doc. 1-1 at ¶¶ 103–35), as they concern Defendant Abigail Saving's offers made during pre-trial negotiations. *See Rogers v. O'Donnell*, 737 F.3d 1026, 1032 (6th Cir. 2013) (noting that examples of "investigative" or "administrative" actions include "giving advice to police officers, or making a press conference statement, or making a statement in application for a warrant").

In short, there are no factual allegations in the Complaint from which the Court could draw the reasonable inference that Defendant Abigail Saving acted as anything other than "advocate" for the State. *See Red Zone 12 LLC*, 758 F. App'x at 514; *see also Huffer v. Bogen*, No. 1:10-CV-312-HJW, 2011 WL 5037209, at *5 (S.D. Ohio Oct. 24, 2011), *aff'd*, 503 F. App'x 455 (6th Cir. 2012) (quotation marks and citation omitted) (dismissing plaintiff's claims against prosecutors where allegations "fail[ed] to allege any facts outside of traditional prosecutorial functions").

11

Plaintiff's claims against her are, therefore, barred by prosecutorial immunity and must be dismissed.

### 3. Sovereign Immunity

Plaintiff's claims against the FBI also cannot proceed.  In *Bivens v. Six Unknown Agents*, the Supreme Court held that a plaintiff could recover damages from federal agents for injuries inflicted in violation of the individual's Fourth Amendment rights.  403 U.S. at 338, 389 (1971). "Such claims are the counterpart to suits under 42 U.S.C. § 1983 against state officials who infringe plaintiffs' federal constitutional or statutory rights."  *Vector Res., Inc. v. Howard & Howard Att'ys, P.C.*, 76 F.3d 692, 698 (1996).  Importantly, however, *Bivens* does not apply to federal agencies.  *See Smith v. F.B.I.*, 22 F. App'x. 523, 524 (6th Cir. 2001) (citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 485–86 (1994)).  Because the FBI is a federal agency, Plaintiff's claims against it cannot proceed.

### 4. Political Subdivision Immunity

Finally, Plaintiff alleges that several individual Defendants, as well as the City of Logan ("the City"), negligently retained Defendant Mowery.  More specifically, he alleges that the City failed to fire Defendant Mowery after he publicly posted his white supremacist beliefs and that the City's policies and procedures should have "prevented these violations" or that those policies and procedures were the direct and proximate cause of "these violations."  (Doc. 1-1 at ¶¶ 179–84). Similarly, Plaintiff alleges that the Captain of Logan's Police Department, Ryan Gabriel, along with Logan Police Detective, Ben Skinner, Logan Patrol Supervisor, Michael Walton, and the City's Mayor, Greg Fraunfelter, knew Defendant Mowery was a white supremacist and negligently allowed him to remain on the police force.  (*Id.* at ¶¶ 176–78).  Plaintiff notes that he is "an LGBT individual," and Defendant Mowery is a "Neo-Nazi."  (*Id.* at 33).

Ohio law, however, offers a broad grant of immunity to political subdivisions and their employees for civil damages actions arising from an alleged "act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1).  There are certain exceptions to this broad grant of immunity, as specifically described in § 2744.02(B) and § 2744.03(A)(6); however, Plaintiff does not raise any of them.

Notably, this statutory immunity applies to only claims for damages, and Plaintiff does not state a specific prayer for relief in his Complaint.  To the extent he is seeking monetary relief from these Defendants, those claims are **DISMISSED**.  To the extent he is seeking injunctive relief, he may amend his Complaint accordingly within twenty-one (21) days of the date of this Order.  Any such amendment must specify with particularity the precise injunctive relief requested as to each of these Defendants.

## D. *Heck* Doctrine

Plaintiff alleges that Defendant Mowery failed to advise him of his *Miranda* rights or provide him an attorney after he requested one.  But because a ruling on these claims would call into question his continuing confinement of two years' probation, these claims are barred by the *Heck* Doctrine.  *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).  And because the exceptions to that doctrine—that the reason for his confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus—do not apply, Plaintiff's claims may not proceed.  *See, e.g.*, *Ray v. Jefferson Cty.*, No. 16–6850, 2017 WL 6759307, at \*\*1–2 (6th Cir. Dec. 5, 2017) (upholding, under *Heck*, dismissal of § 1983 claims against officer who allegedly elicited an incriminating response without providing *Miranda* warning after plaintiff requested counsel).

### E. Unreasonable Searches

Plaintiff alleges that: (1) SEORJ guards unconstitutionally strip searched him; (2) SEORJ employees collected his DNA despite having been arrested for a misdemeanor and not a felony; and (3) Defendant Cluley made false statements to obtain a search warrant. The Undersigned addresses each claim in turn.

#### 1. Strip Search

Plaintiff names SEORJ "as an entity as well as the guards individually" but does not specify whether he is suing the guards in their official or personal capacity. In any event, Plaintiff alleges that he was placed in a holding cell and strip searched. (Doc. 1-1, ¶ 170). He alleges that the strip search "further[] [] inva[ded] [his] privacy to even more extreme levels." (*Id.*).

The Supreme Court has held that "detainees may be subjected to suspicionless strip searches as part of the jail's intake process." *See Florence v. Bd. of Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012). In other words, "as a general matter, strip searches of pretrial detainees are constitutionally permissible." *Johns v. Oakland Cty.*, No. 15-CV-12924, 2016 WL 4396065, at *6 (E.D. Mich. Aug. 18, 2016) (citing *Florence*, 556 U.S. at 328). Jails may not, however, "conduct a strip-search in any way, shape, or form," including, for example, "'in intentional and other abusive practices.'" *Johns*, 2016 WL 4396065, at *7 (quoting *Florence*, 556 U.S. at 339).

But Plaintiff does not allege particular facts surrounding the strip search. *Cf. Johns*, 2016 WL 4396065, at *7 (internal quotation marks and citations omitted) ("Here, Johns alleges not only that she was strip searched, but that she was strip searched in an abusive manner: while female officers performed the search, they did so in front of male guards, and with Johns' clothes being

14

ripped from her body.").  Accordingly, Plaintiff's general allegation that he was strip searched

upon booking fails as a matter of law.  *See Florence*, 556 U.S. at 328.

### 2.  *DNA Collection*

Plaintiff also alleges that SEORJ, through its employees, collected his DNA even though

Ohio law mandates DNA collection from only felony arrestees.  *See* Ohio Rev. Code § 2901.07

(requiring the head of a law enforcement agency, sheriff, or chief of police to collect DNA from

adult felony arrestees).  To the extent Plaintiff is seeking to hold SEORJ employees liable in their

official capacities, Plaintiff would need to allege facts showing that SEORJ had a policy or custom

that resulted in the unconstitutional conduct.  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436

U.S. 658, 690 (1978).  But there are no facts suggesting that SEORJ had a policy or custom that

permitted its employees to collect DNA from non-felony arrestees.  Accordingly, Plaintiff fails to

state a claim for relief against SEORJ or its guards in their official capacities.

To the extent Plaintiff is seeking to hold SEORJ unnamed guards liable in their personal

capacities, his claims may proceed.  Plaintiff alleges that the individual unnamed guards at SEORJ

collected his DNA even though he was not charged with a felony offense.  Because Plaintiff alleges

that he was charged with a misdemeanor and not a serious crime, his claim survives this initial

screen.  *See Crabbs v. Scott*, 800 F. App'x 332, 334 (6th Cir. 2020) (recognizing that Ohio law

"require[s] DNA collection only from felony arrestees").

### 3.  *Search Warrant*

Plaintiff alleges that Defendant Cluley made deliberate falsehoods in his affidavit in

support of a search warrant, including that officers removed a knife from Plaintiff's person during

his arrest, despite other officers telling Defendant Cluley that he did not possess a weapon.  (Doc.

15

1-1 at ¶¶ 79–83). The Undersigned notes that the State conceded that the warrant was deficient at the suppression hearing. (*Id.* at ¶ 117).

"An officer who obtains a search warrant by making materially false statements in the affidavit on which the warrant is based may be held liable" where "(1) the officer made the false statements knowingly and intentionally or with a reckless disregard for the truth and (2) setting aside the false statements, the remainder of the affidavit is insufficient to establish probable cause." *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 465 (N.D. Ohio 2012) (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)).

To the extent Plaintiff seeks to hold Defendant Cluley liable in his official capacity, Plaintiff has failed to show that the Logan Police Department had a custom or policy resulting in Plaintiff's alleged constitutional deprivation. *See Monell*, 436 U.S. at 690. Regarding Defendant Cluley's personal liability, while the facts of the case may show otherwise, Plaintiff has pled enough to state a plausible illegal search claim against him. *Cf. Gonzales v. City of Fostoria*, No. 3:13 CV 796, 2014 WL 99114, at *8 (N.D. Ohio Jan. 9, 2014) (dismissing illegal search claim where complaint failed to identify any false statements contained in the application for the search warrant).

### F.      Excessive Force

Plaintiff alleges that Defendant Mowery attacked him during his arrest, grabbing him by the collar, whipping him to his knees, slamming his head into the concrete, and leaving bruises on his abdomen. (Doc. 1-1 at ¶ 57). Plaintiff also alleges that Defendant Mowery handcuffed him so tightly that his wrists lost circulation and bruised. (*Id.* at ¶ 59). Plaintiff further alleges that Defendant Mowery used force even though Plaintiff physically complied during his arrest. (*Id.* at ¶ 56). Additionally, Plaintiff alleges that, after Defendant Mowery used excessive force,

16

Defendant Detective Skinner piled onto him and tasered him, and Defendant Captain Gabriel, along with other officers, "pushed [his] way through to brutally restrain Plaintiff." (*Id.* at ¶¶ 154, 164).

"It is axiomatic that individuals have a constitutional right not to be subjected to excessive force during an arrest." *Brient v. Calendine*, No. 2:15-CV-2965, 2015 WL 7076671, at *5 (S.D. Ohio Nov. 13, 2015), *report and recommendation adopted*, No. 15-CV-2965, 2016 WL 164102 (S.D. Ohio Jan. 14, 2016) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). If, however, "the amount of force used to accomplish the arrest is objectively reasonable based on Fourth Amendment seizure principles, then no constitutional violation occurred." *Brient*, 2015 WL 7076671, at *5.

To the extent Plaintiff seeks to hold these officers liable in their official capacities, Plaintiff has failed to allege facts showing that the Logan Police Department had a custom or policy resulting in Plaintiff's constitutional deprivation. *See Monell*, 436 U.S. at 690. But Plaintiff's allegations, on their face, state a plausible excessive force claim against them in their personal capacities. Plaintiff may proceed with these claims as a result.

## V. CONCLUSION

Plaintiff's request to proceed *in forma pauperis* is **GRANTED**. And based upon the foregoing, it is **RECOMMENDED** that Plaintiff be permitted to proceed with his claims against: (1) Defendants Unnamed SEORJ Guards for their alleged unconstitutional collection of his DNA; (2) Defendant Cluley for his alleged misrepresentations in obtaining a search warrant; and (3) Defendants Mowery, Skinner, and Gabriel for their alleged excessive force against Plaintiff. Because Plaintiff's Complaint does not specify damages or injunctive relief, Plaintiff is **ORDERED** to amend his Complaint to include specific relief requested from each Defendant

within twenty-one (21) days of the date of this Report and Recommendation.  It is further **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED**.

Finally, it is **RECOMMENDED** that the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of an Order adopting this Report and Recommendation would not be taken in good faith and, consequently, leave for Plaintiff to appeal *in forma pauper*is is **DENIED**.

<u>**Procedure on Objections to Report and Recommendation**</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:  December 4, 2020                                    /s/ Kimberly A. Jolson
                                                          KIMBERLY A. JOLSON
                                                          UNITED STATES MAGISTRATE JUDGE