**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREW SMIGELSKI, | ) | |
| | ) | Case No. 2:20-cv-4812 |
| Plaintiff | ) | |
| | ) | JUDGE MORRISON |
| V. | ) | |
| | ) | MAGISTRATE JUDGE JOLSON |
| GREGG CLULEY, et. al. | ) | |
| | ) | |
| Defendants | ) | |

*DEFENDANTS GREGG CLULEY, RYAN GABRIEL AND BEN SKINNER*
*REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT*

## I.        INTRODUCTION

Plaintiff Andrew Smigelski is a self-proclaimed author of fictional stories, *Smigelski Depo. p. 94-95*, and Plaintiff's Response to Defendants Mowery, Skinner, Gabriel, Cluley Motion for Summary Judgment (Doc. 120) ("Plaintiff's Response") is just that - a work of fiction. Plaintiff's Response is long on unsupported speculation and conspiracies and short on actual Rule 56 evidence necessary to support his claims. Despite Plaintiff's flair for rhetoric, Plaintiff's Response fails to meet his burden to establish that any genuine issues of material fact exist and fails to establish that Defendants Skinner, Gabriel and Cluley are not entitled to qualified immunity. Summary judgment should be granted and all claims asserted against Defendants Skinner, Gabriel and Cluley should be dismissed with prejudice.

## II.     CLARIFICATION OF THE CASE

### A.     Plaintiff has been found guilty of menacing beyond a reasonable doubt and his conviction has been affirmed by the Ohio Fourth District Court of Appeals.

Plaintiff devotes a large portion of his response to arguing about the legality of his arrest and whether law enforcement had probable cause to arrest him.  Plaintiff argues, at length, that he did not threaten his neighbors and that he should not have been arrested.

The undisputed evidence in this case establishes that Plaintiff was convicted of menacing and that the conviction was upheld by the Ohio Fourth District Court of Appeals.  *Smigelski Depo. p. 121, see also State v. Smigelski*, 4th Dist. No. 19CA6, 2019-Ohio-4561, 2019 WL 5797340 (Nov. 1, 2019).  Federal law prohibits a plaintiff from collaterally attacking a state law conviction through a lawsuit filed under §1983.  *Heck v. Humphrey*, 512 U.S. 477 (1994).  As a result, it has already been judicially determined, as a matter of law and beyond a reasonable doubt, that Plaintiff menaced his neighbors.  His protestations and claims to the contrary must be rejected.

Furthermore, these arguments are wholly irrelevant to the claims asserted against Captain Gabriel, Lt. Cluley and Officer Skinner.  The sole claim asserted by Plaintiff against Captain Gabriel and Officer Skinner is the claim that they utilized excessive force.  The sole claim asserted by Plaintiff against Lt. Cluley is the claim that he knowingly included false statements in the search warrant affidavit.  Neither of these claims are supported by evidence.  Plaintiff's efforts to "contextualize" this case is nothing but an effort to distract this Honorable Court from the claims that have been asserted and the lack of evidence that Plaintiff has to support those claims.

### B.     It is undisputed that Captain Gabriel and Officer Skinner were not involved in the takedown.

Plaintiff similarly devotes a significant portion of his response to discussing whether he was actively resisting at the time that the takedown was performed and whether that use of force

was objectively reasonable under the Fourth Amendment.  This discussion, however, is irrelevant to any claims pending against Captain Gabriel or Officer Skinner, as it is undisputed that neither of these officers were involved in the takedown.

**C.      There is no evidence that Officer Skinner punched Plaintiff with his Taser.**

Plaintiff maintains his assertion that Officer Skinner "began punching Plaintiff in the spine with his Taser, directly above Plaintiff's heart."  Plaintiff's false assertion is belied by the same video evidence cited by Plaintiff.  The video evidence clearly establishes that Officer Skinner never made any punching motion toward the Plaintiff with his Taser.  *See Ex. 2, Mowery Body Cam Video, AXON_Body_2_Video_2018-09-12_746*, 44:50-45:15; *Ex. 4, Skinner Body Cam Video, Colorado_Ave_Stand_Off.mp4,35:30-36:10.*   Again, at most Officer Skinner moved toward Plaintiff with his Taser and placed the Taser near the Plaintiff, as if to utilize the Taser in drive-stun mode.  Plaintiff concedes that Officer Skinner never discharged his Taser. *See Ex. 3, Smigelski Depo. p. 112*.

Plaintiff repeatedly cites to statements made by Officer Skinner while he was working on the perimeter outside of the Plaintiff's house, as if to argue that Officer Skinner had an intention to utilize excessive force.  These statements, however, are wholly irrelevant to the Plaintiff's excessive force claim. As the United States Supreme Court has held "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force." *Graham v. Connor*, 490 U.S. 386, 397 (1989).   Plaintiff's arguments related to statements made by Officer Skinner prior to the use of force must be rejected and those statements should not be considered in ruling upon whether Officer Skinner used excessive force.

**D.      There is no evidence that Lt. Cluley knowingly made false statements.**

Plaintiff attempts to establish that Lt. Cluley had actual knowledge regarding the search of his person that occurred incident to his arrest in an attempt to establish that Lt. Cluley knowingly made false statements. The video scenes referenced, however, fail to support Plaintiff's conclusion. Instead, the video scenes only serve to demonstrate that Lt. Cluley was not personally involved in searching Plaintiff for weapons after his arrest. There is no evidence that Lt. Cluley personally saw or heard anything that would directly contradict the statements that he made in the affidavit.

**III.      LAW AND ARGUMENT**

**A.      Standard of Review**

In opposing summary judgment, Plaintiff "may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must make an affirmative showing with proper evidence to defeat the motion." *Alexander v. Caresource*, 576 F.3d 551, 558 (6th Cir.2009). The party opposing summary judgment must do more than simply show that there is some metaphysical doubts as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As a result, the "mere scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

> Qualified immunity protects government officials from civil damages "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, — U.S. —, 138 S.Ct. 577, 589, 199 L.Ed.2d 453 (2018); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This doctrine "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir.2009) (citation omitted). Plaintiffs bear the burden

4

of showing that qualified immunity does not apply, and must show
both prongs to carry it. *Id*.

*Reich v. City of Elizabethtown, Ky.*, 945 F.3d 968, 977-978 (6th Cir.2019). Plaintiff has not met

this burden here.

      **B.**      **There is no evidence that would establish that Officer Skinner violated clearly established law or used excessive force against Plaintiff.**

Plaintiff continues to assert that Officer Skinner used his Taser to punch Plaintiff in the

back. This assertion is unequivocally disputed by the video recording, which establishes, beyond

a doubt, that Plaintiff's assertion is false. The law is clear that where, as here, there is video

evidence capturing the events in question, the court must view the facts in the light depicted by the

video. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007). When the video is reviewed in its entirety,

there is no genuine dispute of material fact. Officer Skinner did not punch or strike Plaintiff with

a Taser. Instead, the videotape reveals that Officer Skinner approached the Plaintiff as the

takedown was occurring and placed the Taser near the Plaintiff in the event that Plaintiff continued

to resist and the use of the Taser became necessary. It is undisputed that Officer Skinner never

discharged the Taser.

None of the cases cited to by Plaintiff involve the extremely minimal, if any, force utilized

by Officer Skinner. In *Butler v. City of Detroit, Michigan*, 936 F.3d 410, 425 (6th Cir.2019), the

appellate court affirmed denial of qualified immunity when the evidence produced could support

a finding that the plaintiff was "unfailingly cooperative" with police officers and that the officer

nevertheless slammed him against the wall face first. Here, of course, there is no evidence that

Officer Skinner slammed the Plaintiff at all. The only evidence demonstrates that Officer Skinner

placed his Taser near the Plaintiff and did not discharge it. Furthermore, there is no evidence that

Plaintiff was "unfailingly cooperative." Instead, the video documents that Plaintiff did not

cooperate with law enforcement commands. *Butler* does not clearly establish that Officer Skinner's actions were objectively unreasonable.

Contrary to Plaintiff's assertion, *Jacobs v. Alam*, 915 F.3d 1028, 1041-42 (6th Cir.2019) bears no resemblance to the facts at issue in this case. The plaintiff in *Jacobs* was shot three times by police officers. The trial court denied summary judgment and denied officers the defense of qualified immunity, finding that genuine issues of material fact existed regarding whether the plaintiff posed an immediate threat to the safety of the officers at the time that deadly force was used. Specifically, the officers contended that the plaintiff came up the stairs while the officers were executing a warrant, brandished a firearm and shot at the officers. The plaintiff, in contrast, contended that he went upstairs, saw the police officers, reached toward his holster and turned around to go back down the stairs. There does not appear to have been any video recordings of the encounter. These facts are nothing like the facts at issue in this case. *Jacobs* does not operate to strip Officer Skinner of qualified immunity.

Another case cited to by Plaintiff, *Brown v. Lewis*, 779 F.3d 401, 419 (6th Cir.2015) is similarly inapposite. In that case, the police mistakenly stopped the plaintiff believing that she was a man who had just called 911 and made a statement that he was going to "kill that b*tch." When the police initiated the traffic stop, the plaintiff was compliant, followed every order and kept her hands in clear view throughout the entire encounter. The plaintiff was ordered to get out of her car and, as she attempted to comply and before her foot could touch the ground, two officers grabbed her by her sweatshirt, threw her to the ground, and then kneed her in the back while placing her in handcuffs. The trial court held that, accepting the Plaintiff's version of the facts, the officers were not entitled to summary judgment. Again, there is no evidence that Officer Skinner utilized a level of force anywhere near that used in *Brown*. Instead, the video evidence simply

6

demonstrates that Officer Skinner placed his Taser near the Plaintiff and did not discharge the Taser. There is no excessive force and Plaintiff has failed to demonstrate that this minimal use of force was excessive.

Similarly, in *Moser v. Etowah Police Dept.*, 27 F.4th 1148 (6th Cir.2022) the appellate court reversed summary judgment and found that there were genuine issues of material fact as to whether police officers grabbing a woman and pinning her to the ground with enough force to break her hip and leg constituted excessive force. Again, the force at issue and the facts of *Moser* are distinguishable and wholly unrelated to the claim against Officer Skinner.

Finally, Plaintiff cites to *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 688 (6th Cir.2006) and asserts that this case, specifically establishes that Officer Skinner's conduct violated clearly established law. It does not. The force at issue in that case, as described by the *Shreve* plaintiff, is nothing like the minimal force that was used by Officer Skinner. In *Shreve*, the plaintiff testified that she was incapacitated by pepper spray and complying with officer commands when she was dragged from a closet and a deputy jumped on her back and began beating her with a nightstick, repeatedly, for fifteen to twenty minutes. *Id.* at 684.

Plaintiff has failed to meet his burden to demonstrate that Officer Skinner's actions violated clearly established law. Instead, this Honorable Court should find that Officer Skinner is entitled to qualified immunity. As demonstrated in the video recordings of the incident, Officer Skinner did not punch or strike Plaintiff. He did not use objectively unreasonable force and did not violate any clearly established law. Officer Skinner is entitled to summary judgment and all claims against him should be dismissed.

**C.      There is no evidence that Captain Gabriel violated clearly established law or used excessive force against Plaintiff.**

Plaintiff appears to concede that the undisputed evidence establishes that Captain Gabriel did not use objectively unreasonable force and cannot be held liable for the minimal, if any, force that he utilized in assisting with the Plaintiff's arrest.  Recall, the undisputed video evidence confirms that the only force utilized by Captain Gabriel was to help move the Plaintiff's hands behind his back. *See Doc. 103, Ex. 2, Mowery Body Cam Video 2, 44:55.* Plaintiff has not cited to any case law that would clearly establish that Captain Gabriel's minimal and appropriate conduct violated clearly established law.  For this reason alone, Captain Gabriel should be found to be entitled to qualified immunity and summary judgment must be granted.

For the first time, Plaintiff now asserts that Captain Gabriel should be held liable for any alleged constitutional violations committed by Officer Mowery or Detective Skinner by virtue of the fact that Captain Gabriel holds the rank of police captain.  This argument must be rejected.

As a preliminary matter, the law is well-settled that unconstitutional conduct by a subordinate is a prerequisite for a plaintiff to hold a supervisor liable under a theory of supervisory liability. *Stiles ex. rel. D.S. v. Grainger County, Tenn.*, 819 F.3d 834, 855 (6th Cir.2016).  As described in the motions for summary judgment filed by Officer Mowery and Officer Skinner, Plaintiff's constitutional rights were not violated and, as a result, Captain Gabriel cannot be held liable in his capacity as a supervisor.  Captain Gabriel is entitled to summary judgment and the claim against him should be dismissed.

Furthermore, it is undisputed that § 1983 liability must be based on more than respondeat superior or the right to control employees. *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.1982).  Thus, a supervisory official cannot be held liable unless the supervisor "either encourages the specific incident of misconduct or in some other way directly participated in it.  At

8

a minimum, plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced to the unconstitutional conduct of the offending officers." Importantly, supervisory liability under § 1983 "must be based on active unconstitutional behavior and cannot be based upon a mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999). A supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another. *Crawford v. Tilley*, 15 F.4th 752, 766 (6th Cir.2021). Plaintiff must also show that the defendant's execution of his supervisory responsibilities was the cause in fact and proximate cause of the Plaintiff's alleged injury. *Id.* Finally, to defeat qualified immunity, Plaintiff must be able to establish that any violation by Captain Gabriel was clearly established at the time of the alleged violation. *Reich*, 945 F.3d at 977-978 (6th Cir.2019).

Here, Plaintiff has not pointed to any evidence in the record that would establish that Captain Gabriel can be held liable under a theory of supervisory liability. The only evidence in the record shows that Captain Gabriel was at the scene when Officer Mowery used force. This fact alone, however, is insufficient to establish supervisory liability. Indeed, under this rational, a supervisor could be held liable for the acts of any subordinate officer merely because the officer was at the same scene and would conflate supervisor liability to nothing more than *respondeat superior* liability. There is no evidence that Captain Gabriel authorized, approved or knowingly acquiesced the any unconstitutional behavior.

The only case cited to by Plaintiff regarding a claim for supervisory liability, *Bletz v. Gribble*, 641 F.3d 743 (6th Cir.2011), fails to establish that it was clearly established that Captain Gabriel's conduct violated Plaintiff's constitutional rights. In *Bletz*, plaintiff, the administrator of the decedent's estate, filed suit against two officers that had been executing an arrested after one

9

of the officers utilized deadly force, killing the decedent. The appellate court affirmed the decision to deny summary judgment as to the shooter but reversed the denial of summary judgment as to the other officer on the scene. The court found that the other officer did not utilize deadly force, did not supervise the other officer (and therefore could not be held liable under supervisory liability theory), and did not owe a duty of protection to the victim because the officer had no realistic opportunity to prevent the use of deadly force. *Id. at 753-754.* Although the *Bletz* case does acknowledge the theory of supervisory liability, it does not clearly establish that Captain Gabriel's conduct violated the Plaintiff's constitutional rights. Summary judgment must be granted in favor of Captain Gabriel.

### D. Lt. Cluley is qualifiedly immune from Plaintiff's Fourth Amendment claim.

Plaintiff has failed to demonstrate that Lt. Cluley is not entitled to qualified immunity. In the context of a Fourth Amendment claim that a police officer lied in a search warrant, the Sixth Circuit has distilled a specific inquiry. *Butler*, 936 F.3d at 418. To overcome an officer's entitlement to qualified immunity, a "§ 1983 plaintiff must make 'a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth.'" *Id., quoting Vakilian v. Shaw,* 335 F.3d 509, 517 (6th Cir.2003). Plaintiff must then establish that the purported false or omitted information was material to the finding of probable cause. *Id.* Plaintiff has not met this high standard.

In applying this standard, courts have recognized that "search warrants 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation.'" *Butler*, 936 F.3d at 418, *quoting Illinois v. Gates*, 462 U.S. 213, 235 (1983). Implicit in this demanding standard is the recognition that a police officer swearing out an affidavit can be mistaken and yet remain

protected by qualified immunity. "To overcome this immunity, a plaintiff must present 'substantial' evidence to show a more culpable mental state." *Id.*

Plaintiff in this case has not pointed to any evidence in the record that would support a finding that if there were any misstatements contained within Lt. Cluley's search warrant affidavit, they such misstatements were made deliberately or with reckless disregard for the truth. As in *Butler*, Plaintiff has not produced any evidence about Lt. Cluley's mental state, which is "critical to the qualified immunity question." *Id.* at 419.

In this case, the undisputed evidence establishes that Lt. Cluley prepared the search warrant based upon information that was relayed to him by Officer Eli Burchfield. Plaintiff points to evidence in the record that establishes that - at some point during the Plaintiff's interaction with law enforcement - Officer Burchfield became aware that the gun was on the couch and not in the Plaintiff's hand. However, this evidence does nothing to establish that Lt. Cluley knowingly included a false statement in swearing out the warrant. Moreover, the discrepancy between the gun being in the Plaintiff's hand versus being within arm's reach on the couch behind the Plaintiff is really a distinction without difference. It is undisputed that the loaded gun was in close proximity to Plaintiff throughout the duration of Plaintiff's interaction with law enforcement.

Furthermore, Plaintiff's assertion that Lt. Cluley "witnessed" the search that occurred incident to the arrest is incorrect and not supported by the video. The video simply shows that Lt. Cluley was at the Plaintiff's residence at the time that the search was occurring. It is undisputed that Lt. Cluley did not participate in the search. There is no evidence that Lt. Cluley observed the search or had any personal knowledge regarding what, if anything, was recovered during the search. Accordingly, Plaintiff has not and cannot establish that Lt. Cluley knowingly made false statements when swearing out the affidavit. Plaintiff cannot meet his burden of proof to establish

11

that Lt. Cluley is not entitled to qualified immunity and, as a result and as in *Butler,* summary judgment should be granted.

Plaintiff's challenges as to the breadth of the search permitted by the warrant is outside the scope of the Plaintiff's claim. It is undisputed that the judge reviewed the search warrant, determined that probable cause existed to conduct the search and that the search was performed pursuant to the warrant.

Plaintiff's reliance upon *Ellison v. Balinksi*, 625 F.3d 953, 959 (6th Cir.2010) is misplaced. In that case, the defendant police swore out a search warrant seeking to search the plaintiff's residence. The search warrant affidavit failed to identify the crime that the defendant officer was investigating or that she had probable cause to suspect that evidence related to the crime would be found at the plaintiff's residence. The search warrant did not state how the defendant officer knew that the business entity being investigated was located at the resident or why documentation of some alleged fraud would be found at that residence. In light of all of these deficiencies, the appellate court affirmed the trial court's denial of the defendant's post-trial motions.

The same is not true here. The search warrant affidavit completed by Lt. Cluley clearly identified the crimes that were being investigated (Aggravated menacing in violation of R.C. § 2903.21, Inducing Panic in violation of R.C. § 2917.31 and Having Weapons While Under Disability in Violation of R.C. § 2923.13). The affidavit clearly links the place to be searched, the Plaintiff's residence, with the crimes that were alleged to have been committed. Indeed, all of the criminal activity was alleged to have been committed at the Plaintiff's residence. Furthermore, all of the crimes alleged involve threats of violence. As a result, any documents or information found within the Plaintiff's residence that related to violent thoughts or actions would be relevant to any

12

criminal prosecution against the Plaintiff. As a result, *Ellison* does not operate to deprive Lt. Cluley of qualified immunity.

This case is clearly distinguishable from *Armstrong v. City of Melvindale*, 432 F.3d 695 (6th Cir.2006). In that case, the defendant law enforcement officers executed a warrant on the premises of a business to inventory and seize assets in connection with a forfeiture pending against a non-party. A third-party was present and asserted an ownership interest in some of the property that was being seized. Law enforcement thereafter obtained a search warrant authorizing them to search the third-party's residence for documents that would substantiate that the third-party owned the property and not the party that was subject to forfeiture. There were never any allegations or representations that the third-party had engaged in any criminal activity or that the documents or information sought was related in any way to criminal activity. The court found that the warrant violated the Fourth Amendment because the "the officers did not seek to obtain the warrant on the strength of any link between those ownership documents and a crime." *Id.* at 700. This is not the case here. Instead, the search warrant at issue in this case clearly identifies the crimes that Plaintiff had been alleged to have committed and explained the evidence that was being sought and the reason that the evidence was being sought.

The final case cited to by Plaintiff, *Groh v. Ramirez*, 540 U.S. 551 (2004), similarly does not support Plaintiff's position that his constitutional rights had been violated. In that case, the Supreme Court found that a warrant that failed to describe with particularity that property to be seized did not comply with the Fourth Amendment. This is not the case here. Indeed, the search warrant authorized by the common pleas specifically authorized the search and seizure of "firearms, ammunition, firearm accessories, cell phones computers, writing pertaining to his

13

thought process and any contraband." As the warrant clearly identified the property that was to be searched and seized, *Groh* has not application to the present case.

Plaintiff has not and cannot establish that it was clearly established that Lt. Cluley's conduct in preparing, obtaining and executing the search warrant violated the Plaintiff's Fourth Amendment rights. Lt. Cluley is qualifiedly immune from the Plaintiff's claims and summary judgment should be granted.

## IV.    CONCLUSION

For the reasons set forth in these Defendants' Motion for Summary Judgment and herein, summary judgment should be granted to these Defendants and all claims asserted against them should be dismissed with prejudice.

Respectfully submitted,

FREEMAN, MATHIS & GARY, LLP


*/s/Cara M. Wright*
MICHAEL S. LOUGHRY (0073656) - *Trial Counsel*
CARA M. WRIGHT (0084583)
65 East State Street, Suite 2550
Columbus, OH  43215
T: 614-683-8499 | F: 833-330-3669
Michael.Loughry@fmglaw.com
Cara.Wright@fmglaw.com

*Counsel for Defendants Gregg Cluley,*
*Ryan Gabriel and Ben Skinner*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2022, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

>/s/Cara M. Wright
> MICHAEL S. LOUGHRY (0073656) - *Trial Counsel*
> CARA M. WRIGHT (0084583)
>
> *Counsel for Defendants Gregg Cluley, Ryan Gabriel and Ben Skinner*